The court took further time to advise, and in May, 180-5, at Charleston, present, Wattes, Bay, Brevard, arid Wilds, Justices, in the absence of Guimke, J. and Trbzevant. J.. delivered their opinions seriatim. viz. Watibs, Bay and Brevard, and the opinion of Trezuvajyt, J was read by consent of parties. Wilds,, J. not having heard the arguments, declined giving any opinion.
Brevard, J.
In delivering my opinion in this case, I think it unnecessary to premise a statement of the facts, or of the points of law involved in it. The case has been several times fully and ably argued in court, and must be familiar to all who are interest, ed in its discussion and determination. The question of most difficulty and importance to be discussed, arises on the words of the grant of John Breton to Elizabeth Withers. The words in question are these : “ to the said El zabeth Withers, and to the heirs of her body, and the survivors of them for ever ; to have and to hold, to the said Elizabeth Withers, and the heirs of the body of the said Elizabeth Withers, and the survivors of them, and their heirs and *359 assigns for ever warranted “ to the said Elizabeth Withers, and. the heirs of h'er body, and the survivors of them, and their heirs and assigns for ever.”
In the construction of legal conveyances, the following rules are to be observed :
1. That the Words should be taken most strongly against the donor, or party conveying, and in favor of the donee, or party conveyed unto ; but nevertheless, the construction should be reasonable, and so as to satisfy the intent of both parties.
2. That effect should be given to all the words if possible, as agreeable to reason and confoimable to law ; and a consistent operation to the whole : and that words which may appear repugnant or contrariara should be reconciled, if it can be done, without violating the principles of law, or the rules of legal construction. See Plowd. 152 et seq. Ib. 10, 103, 140, 243, 290, 396, 540. 1 Rep. 65, 96. Hard. 94.
In the interpretation of the words in question, I shall endeavor to adhere to the true sense and spirit of these rules.
The first words, “ to the said Elizabeth Withers; and the heirs of her body,” clearly create an estate tail, or fee-conditional, the limitation being restrained to lineal, in exclusion of collateral heirs. The next words, “ and the survivors of them forever,” have no fixed or determinate meaning, or legal effect, as they are employed in this place.
If we take all the words of the premises together, and suppose them to be expressive of an intention to convey an estate to Elizabeth Withers and her two children in joint-tenancy; they must be considered as having taken, all together, a fee-simple absolute, which fell to the survivor, and vested in him as sole and absolute proprietor. In this case, upon the death of the survivor, Richard or Nathaniel, without issue, his next relation of the blood of the male ancestors, in the lineal ascent by the father, became entitled to the estate, by the law of succession as it then stood, and bis heirs of the* blood of the mother could not inherit. See Plowd. 444, 445.
But I think there is no good ground for this construction. The expression, “ survivors of them,” in the plural, seems to preclude the notion, that a joint estate was intended. It appears to me most probable, that the donor intended to convey the estate to Elizabeth Withers, and the heirs of her body; and that the same should continue to descend to such heirs in succession forever : the more remote to fake after the more near by survivorship.
*360 If such intention can be fairly collected from all the words considered together, and I am of opinion it may ; and the particular words now tinder consideration can be construed to accord with such intention, which certainly cannot be denied ; then the latter words may be considered as abundant and superfluous : being intended to effect no more than wiutt the preceding words are fully competent to ; for, the technical expression, “ heirs of the body,” comprehends, in point Of description, heirs of the body of such heirs of the body; who, after the death of the immediate heirs of the body, will be heirs of the body, and include the whole line; dr denomination of heirs of the body. See Co. Lltt. 26 b. 1 Fearne. 6th Ed. 108, 109. 1 Atk. 412. If this bdnstruction should be admitted; Elizabeth Withers took a fee simple conditional; by the words in the premises.
The words superadded in the habendum, and 'claude of warranty; may very well, in my judgment, be reconciled with this construction of the words in the premises; and, it seems to the, a more easy, natural, and beneficial exposition, than any other which can be given to the words in question: more so than that which would make the superadded words operate to enlarge the estate before given in the premises, and superinduce a fee simple absolute in expectancy, upon an estate in fee simple conditional.
The words, “ and their heirs and assigns, forever,” in the lice* bendum, do not, by necessary construction, oppose or contradict the effect of the preceding words, according to the construction given them. The word “ heirs,” although expressed in general, without any qualification, or particular description, to confine the meaning to special heirs, must be understood with reference to the preceding Words, and in conformity with the intention of the donor, and must tnean the same kiud of heirs before described, if this word should be construed to mean any other kind of heirs, as heirs general, the intention manifested by. the preceding words would be contradicted; and a different intent, inconsistent with the prior intent, would be set up, one of which must be defeated, for both cannot be satisfied.
The prior intent seems to be very clearly signified, by plain and effectual words; but, the latter intent, if any latter intent repug. xiant id the former can be supposed, is at least doubtful and uncertain : and, therefore, as an estate in fee simple conditional is clearly given in the premises, by words sufficiently explicit, it shall not be defeated by subsequent doubtful, or contradictory words.- See 2 Ld. Raym. 1437. 2 Str. 729. 1 Fearne, 246-7. This word “ heirs,” cannot be construed to mean the heirs general of any particular *361 heir of the body of Elizabeth Withers. The expression, “ their heirs,” excludes any such construction. To contend that these words, “ their heirs,” do necessarily include the heirs of Elizabeth Withers, would be absurd. Besides, it would not be true; for, the right heirs of Nathaniel, and Richard Withers, being the collateral heirs on the part of their father, are not the heirs of Elizabeth Withers, their mother. Ii the word “ heirs” could be construed in any way so as to give a fee simple absolute to Elizabeth Withers, it would entirely overthrow the preceding words, “.heirs of her body.” See Cowp. 835, 839.
Nothing decisive, or certain, can be infered from the additional words “ assigns.” The donor may have intended by it to convey an assignable estate; but, we are not thence to conclude, that he meant to convey to the donee a fee simple 'absolute. The word “assigns,” is not a word of inheritance. Litt. §. 1. 2 Bl. Rep. 1185.
A man’s assigns are included in himself. The word imports no more than the preceding words. It is a redundant and superfluous word. Plow. 289. 3 Leon. 5. The same may be said of the word “ forever.”
The following authorities support the construction, that the word “ heirs,” in the habendum, must be taken to mean' the same kind of of heirs before described in the premises, viz: heirs of the body of Elizabeth Withers, Wright v. Pearson, Ambl. 358. 1 Fearne. Devise to the use of the heirs male of R. T. a-.d their heirs: Lord Keeper Henley was of opinion that the words, “their heirs,” were redundant and surplusage, and that R. T. took an estate tail. Webb v. Herring, Cro. Jac. 415. See 2 Ld. Raym. 720. 3 Bur. 1103. 2 P. Wms. 341. Doug. 266, 321. 1 Ves. 89. 2 Fearne, 153. 1 P. Wms, 23. Cowp. 234, 308, 410. Dyer 171. 1 Eq. Ca. Abr. 197. 8 Vin. Abr. 272.
Upon the same principle it has been decided, that where there bad been a preceding- devise to issue, or children, the words, “ in default of issue.” afterwards mentioned as a contingency upon which the estate should vest, shall be taken to mean in default of such issue, as would be intitled to take under the devise. 1 Salk. 224. 1 P. Wms. 600. Doug. 251
The rules of law seem to require, that the word “ heirs,” iu the habendum, which occasions the principal doubt in this case, should either be construed to mean heirs of the body, according to the premises, or considered as a word of doubtful intention. In either case, the estate given in the premises, must stand unaltered, and uncontrolled by the habendum. This must be the result, if the decision *362 in this case is to be directed by former determinations, and the rules that have been settled by adjudged cases ; and, the general security of titles, and the quiet enjoyment of properly, require that it should be so.
It all doubtful and difficult cases, it is wise and safe to abide by former precedents, and the rules marked out by former decisions. It would be mischievous and dangerous to depart from them, and listen to the suggestions of an arbitrary and fluctuating discretion. And for what purpose should we do so in this case? To favor a rigid and hard rule of law, or to give effect to the conjectural intent of doubtful words in a deed 1 See 1 Fearne, 267, et seq. “ It is the duty of the courts of justice, and one of great importance to the community, to expound the law they administer, upon such principles of argument and construction, as may furnish rules which shall govern in all similar and analogous cases.” Doug. Pref. to his Rep.
The strongest argument for the plaintiffs, is bottomed on the rule laid down in Shelly’s case. .1 Rep. 96. “That wherever a freehold estate is limited to the ancestor, and in the same conveyance an immediate, or mediate remainder is thereon limited, to his heirs, the word “ heiis” shall be a word of limitation, and not of purchase, and the heirs shall take by descent.”
It has been strenuously urged, that this rule applies directly to, and must govern the pieseut case. That the word “ heirs.” in the habendum, must he taken to mean heirs general; and especially, being combined witli the words “survivors of them and their assigns,” must be construed to expand and enlarge the estate given by the precedent words, and engraft thereon a fee simple absolute, in expectancy, to Elizabeth W ithers, and her heirs general, upon failure of the special heirs before described. Co. Litt. 183, 299. Plowd. 433. 14 Vin. Abr. 152. 9 Rep. 49. And, therefore, that upon failure of heirs of her body, the absolute estate in fee simple, haying vested in Elizabeth Withers ; and, she having taken the same by purchase, the inheritance, at her death, could not devolve on any one who was not of her whole blood : and, that her whole blood failing, the land escheated to the State ; and, the legislature of the State, by the escheat act of 1787, having.granted the same to the half-blood of the last proprietor, from whom it escheated, the plaintiffs became entitled as next heir of the halt-blood.
By the law of England, a deed in the premises to A., and the heirs of his body, may he enlarged in the habendum, to a fee simpie expectant, by the words, “ to him and Ins heirs;” because# •therwise, the habendum would be void. 2 Bi, Com, 298,
*363 But, in the principal case, the words in the habendum are not to him, and his heirs, bui to the survivors of the heirs of the body of Elizabeth Withers, and their heirs, vi hich import a different meaning, or involve the intention in obscurity and doubt: and, it is a rule of law, that in conveyances of estates, they are not to be ad¡mitted to pass by implication, as in devises. Vaugh. 261.
But, if we admit that the donor’s intention, by construction of law, must be expounded with a view to give the land in question to Elizabeth Withers for life, remainder to her two sons in tail, remain, der to her right heirs, as contended for; although, according to the doctrine of the English law, founded on the statute de donis. Elizabeth Withers must have taken the entire estate in fee, divided by, and subject to the estate tail of her issue, see Fearne on Coining. Rem. 6th Ed 105. 14 Vin. Abr. 153, 156, yet, inasmuch as the statute de donis was never oí force with us, no such remainder could be limited.
In England, a fee simple expectant may be limited upon an estate tail, by construction of the statute de donis„ 2 Inst. 335. 2 Woodes. 12, 13. For the statute abridges and divides the estate; and the estate tail cannot merge m, or unite with the fee simple: but, according to the principles of the common law, no such remainder can be limited upon, or after a fee simple absolute, or conditional. At the common law, before the statute de donis, all estates of inheritance were fee simple absolute, or conditional; and, if. a man gave, or devised lands to another, and the .heirs of his body, the donor could limit no remainder. Co. Lift. 19. 22. Plowd. 235, 242. 15 Vin. Abr. 364. 2 Rep. 74. 1 Salk. 338. 2 Bl Com. 178. 4 Com. Dig. Tit. “Estate,” B. 13. 1 P. Wms 74, 366. Co. Litt. 327. Butler’s notes. Fearne on Ex. Dev. 87. Pow. notes.
The condition implied in the donation being if the donee shall nave heirs of his body, when he has issue, the condition is per. formed, and he may alienate the tee; but a limitation over upon failure of heirs of his body, would be inconsistent with this power of alienation : for issue might be born, which would enable die donee to aliene, and afterwards the donee might die withoui issue; and, by the common law, upon having issue, the estate was subject to forfeiture for felony. Plow. 250, 251.
The statute de donis never was in force with us. It is expressly enacted by the act of 1734, “• that estates conditional, at the common law, in fee simple, shall not be construed to be estates ir. fee tail.” P. L. 139. It seems clear, then, ou principies of common *364 Jaw, that the limitation over, if such were intended, of a fee-siraP'e a^SH^ute’ after a fee.simple conditional, is repugnant and void : f°r a man cannot create a new sort of inheritance, or model the course of descent contrary to law. If this position he correct, the plaintiffs have no right to claim the lands in dispute, as heirs of the half -blood to Elizabeth Withers.
Let us go a step further, and admit that a fee-simple absolute, may be grafted on a fee simple conditional; and that the word heirs, in the habendum, may be construed to enlarge the estate in the premises, to a fee.simple absolute : yet it will not follow, that the rule in Shelly’s case is applicable to, and decisive of the present., According to Mr. Hargrave, see Fearne on Conting. Rem. 6th Ed, 294, “ the rule in Shelly’s case is no medium for finding out the intention of the testator; on the contrary, the rule supposes the intention already discovered, and to be a superadded succession to the heirs general, or special, of the donee, for life, by making such donee the aucestor, or terminus, from which the whole generation, or posterity of heirs, is to be accounted : and whether the conveyance has, or has not, so constituted an estate of freehold, with a succession engrafted upon it, is a previous question, which ought to be adjudged before the rule is thought ot.” The ordinary rules for interpreting the language of wills, which have principally in view the intention of the testator, do not strictly apply in the construction of deeds. See Plowd. 162 — 3. Vaugh. 261. Yet if we allow the same latitude and liberality of construe, tion in this case, as if it were the case of a devise, I believe it would be difficult to collect from the words of the deed in question, an intention to limit over the absolute fee simpl - to Elizabeth Withers, and her heirs general, on failure of heirs of her body. It seems to me clear, that the intention was different, for the reasons before assigned. It is more probable, I think, that the intention was to give the estate in perpetual succession, to her, and the heirs of her body, in case there should continue to be heirs of her body; and in case of the failure of such heirs, then, that the absolute fee» simple should vest in the last surviving heir of her body, and go to his heirs general. This construction gives meaning to all the words; but they cannot be satisfied according to such intent. The limitation, being intended to take place after an indefinite failure of issue, is clearly void, as tending to a perpetuity. 2 Wooddes. 2 Fearne, 73, 115, 129, 324. To say, that in the present case there could be no perpetuity, because Elizabeth Withers had only two children, who survived her, and they both died without issue} *365 Would be idle, since for any thing that could have been fóre-known, she might have had many children, and grand-children ; and the .contingency of their becoming extinct, or being reduced to the last .survivor, might be very remote, and might not happen for many generations : and it is against the’ policy of the law, that estates should be lied up, aud rendered unalienable for a great or indefinite length of time. But if wé should go still further, and allow that the word ‘‘ heirs" in the habendum, can admit of no other .construction, than that which has been contended for, arid must be taken to mean the heirs general of Elizabeth Withers ; yet the application and conclusive operation of'the rule in Shelly’s case, may nevertheless, I conceive, well be doubted. The rule .itself I do not mean at present to question, although t think it may admit of a serious question, how far it should be permitted to operate, teven in cases where its application is admitted. Perhaps the rule itself may safely be denied, as incompatible with the nature of our estates, their succession, and transmission.
The foundation upon which the principle was adopted, which gave rise to the rule, has long since failed by the abolition of tenures. See Stat. 12, Car. á, c. 8, P L. 99. Yet the technical import of such limitation having been established, the construction of the instrument continued the same. But the courts iri England have been very cautious and subtle, to avoid the rigor of the rule, since the reason of it has ceased ; and therefore admit no cases to be governed by it, but such as come strictly within it. The principle which gave rise to the rule, was founded on a feudal maxim, that an heir should not take a contingent remainder of an estate as purchaser; where his ancestor took a freehold estate by the same conveyance ; because the lord might be defrauded of the fruits of Ms tenure. See 2 Bur. 1107. 1 Fearne, 235. Pow. on Dev. 355 — 8; The coutts of this country, it is presumed, will be little influenced by the fundamental reason of the rule, and not very indulgent to the principle upon which it has arisen. They will hardly be inclined to favor the rule, and stretch it to reach doubtful cases, or those not clearly within it, by giving a rigid technical interpretation to ivords of doubtful import, in order to enforce their subjection to its rigorous operation. The distinction which has been insisted on between trust estates in equity, and mere legal estates, has been induced by the necessity and propriety of curbing the rigor of the rule. 1 Fearne, 168, 183. The effect of the distinction is, to give the heirs of the body of cestui que trust, by 4he description of heirs of the body, she estate as purchaser, á!» *366 though limited to the cestui que trust for life, instead of giving the cestui que trust an estate tail, which would be the construction, if the estate were merely legal. But this distinction does not prove that the rule is favored in its application to estates merely legal ; or that its operation is not, in some measure, restrained, although not to the same extent, as in cases of trust estates m equity.
For the defendant it was contended, that under the description of heirs of the body, and survivors of them, thé sons of Elizabeth "Withers took as purchasers ; and that the estate ought to be considered as commencing in them. See I Fearne, 107. But this position, I think, cannot be maintained. The cases cited in support of the position, are very .distinguishable from the present. In Archer’s case, 1 Rep. 06, the estate was given to R. A. for life, and after his decease to the next heir male of R. A., and to the heirs male of the body of such heir male. The words “ next heir male,” were adjudged to be a description of the person to take the fee. But there are no such words of description in the present case. In the case of King v. Melling, 2 Lev. 58, 1 Ventr. 214, 225, an estate was devised to B. for life, and after his death, to the issue of his body by his second wife, and for default of such’ issue, over. There, although the estate was expressly given for life to B., yet it was adjudged that he took an estate tail, and that the words were not sufficiently descriptive of a person, to take as purchaser by the terms of the devise. See Anders. 110 1 Roll 839. 2 Roll. 253. 2 Lev. 60. In the case of Goodright v. Pullyn, 2 Ld. Raym. 1437. 2 Str. 729, the devise was to N. L. for life, and after his decease, unto the heirs male of the body of N. L. and his heirs for ever : but if he should die without such heir male, then over. Here, although it might seem that the words heir male, in the singular number, and his heirs for ever, manifest an intent to describe a person to take by purchase, yet the court adjudged otherwise, and that N. L. took an estate tail, and that the operation of plain and clear words, viz. heirs male of the body; and that a settled rule of law, should not be defeated or bmke into by uncertain and doubtful words, viz. if he should die wvhout such heir male, which do not necessarily imply that the heirs so described shall take by purchase, and not by descent: and heirs in the plural is generally construed a word of limitation, and not a word of description of a particular heir, especially where the intent is uncertain and conjectural. See Pow. on D v. 373. Amb. 344. 1 East, 264, 276,
In the case of a will, if the testator’s intent be clear, from other parts of the will, the word “ heir#” may be construed a word of *367 description, and the heir shall take as purchaser ; but the intent should appear by plain expression, or necessary implication. 4 Bur. 2579. Perrin v. Blake, 1 Bl. Rep. 672. The present is not a case of a devise : and if it were, the intent does not manifestly appear. If the sons of Elizabeth Withers took by words of description, or either of them, as purchaser, it is clear that her collateral heirs can have no right to the land by descent. But, it may be said, upon the death of the first •purchaser, without lineal heirs, his collateral heirs could not succeed to the inheritance, upon the feudal principle, that the personal merit of the first feudatory is supposed to be the moving cause of the grant, and that the teud could only go to the blood or issue of such feudatory. 2 Bl. Com. 220. If this should be granted, the plaintiffs ought not to recover, because they must recover on the strength of their own title, and not on the weakness or deficiency of their adversaries’ title. Run. on Ejectm. But the grant, in the present case, must now be considered as of a new feud, to be taken as an ancient feud, descend, ed from the ancestors of the grantee. 2 Bl. Com. 212, 222. And therefore, on failure of lineal heirs, the collateral heirs of the grantee are entitled to the succession.
In short, my opinion is, 1. That Elizabeth Withers, and her sons, did not take a fee-simple ahsoluteas joint-tenants. 2. That her sons did not take by words of description, as purchasers. 3. That she did not take a fee-simple absolute, expectant, engrafted on a fee-simple conditional by force of the superadded words in question : first, because I think that the s uperadded words may he legally expounded to mean the heirs of her body, in successive generation, ad infinitum; second]}, because, if they cannot beso construed, yet inasmuch as they are uncertain and doubtful, and the precedent words are clear and explicit, and give an unquestionable estate in fee-simple conditional, therefore the estate so given, cannot be defeated by such uncertain and inconsistent words: thirdly, because 1 am of of opinion, that no such estate in expectancy can be limited up. on, or after an estate in fee-simple conditional: and fourthly, because the estate in fee-simple conditional cannot be merged and extinguished in an estate in fee-simple absolute, by force of the sub. sequent words in the habendum of the deed ; as it would be making the deed operate by implication and construction, contrary to a plain and manifest intent. 4. I am of opinion, that the intent of the deed was to give the land in question to Elizabeth Withers, and the heirs ot her body, or posterity, in succession forever ; and that she took a fee-simple conditional, according to the principles *368 of the common law of England ; and consequently, that the fee never vested absolutely in her, and therefore cannot be legally reco« vel'ed by any one claiming by descent from her. 5. Í am of opinion, that upon failure of heirs of the body of Elizabeth Withers, the land reverted, or returned back to the donor, John Breton, or his heirs, or devisees, according to the implied condition of his grant. See Litt. § 13. Co. Litt. 22, 27. Plowd. 153, 235, 242. The reversion, or possibility of reverter, was descendible and deviseable, and might, pass to the residuary devisee of Breton, Magdalen Juneau, and from her, in like manner, might pass to Mary Mitberington, the mother of Butler’s wives, from whom the defendant derives his title. 2 Inst. 335. 10 Mod. 528. Pow. on Dev. 234. 235. A. A. 1734, P. L. 139. The donee having had issue, the condition was perlormed, and she might have aliened ; but her issue having died without issue, before any alienation, the donor, by the common law of England, was intitled to a formedun in reverter. Florid, 235, 245,251.
If it could be maintained on any legal principle, that the estate vested absolutely in the sons of Elizabeth Withers, and was transmissable to their heirs general, it must be admitted, that upon failure of lineal heirs, it would go to their collateral heirs by thoir fathers’s side; and that Rand was the rightful heir. But even on this ground, the plaintiffs would have no right to recover. Although the plaintiffs’ deed of eonveyain C from Rand was first recorded in the register’s office, yet there can be no doubt but that he knew, at the time when he accepted this conveyance, that Rand had previously sold and conveyed the laud to the defendant: for Rand’s wife, in a conversation with the plaintiff about the conveyance he was obtaining from her husband, expressed her fears that her husband would be brought into trouble, if be made a-second conveyance of the laud be had already sold. The act to prevent deceits by double mortgages, passed in 1698, declares, that “ that sale, conveyance, or mortgage, of lands and tenements, except original giants, which shall be first registered in the register’s office in Charleston, shall be taken and held to be the first sale, &c. and to be good and lawful in all courts within the province ; any former or other sale, &e. of the same land, notwithstanding.” The design ot this .act, and the mischief intended to be guarded against, appears by the preamble : “ Whereas, the want or neglect of registering and recording of sales and con. veyances of lands, negroes, &c. hath encouraged and given opportunity to several knavish and necessitous persons to make two or more gales, conveyances, and mortgages of the land, &o., to se. *369 Vo ral persons, whereby buyers and lenders do often lose their mo. irey, &c.” In order to favor the design of the act, and prevent knavish and fraudulent consequences, the act should be construed liberally, so as to suppress the mischief, and relieve against the ef. feels of such frauds; and not so as to be made the instrument of protecting fraud. Lex. Prœtor. 9. 1 Fonbl. 23, 113. 2 Fonbl. 38. 5 Rep. 60 Cowp. 434. Ambl. 67. 1 Ves. 221, 125. “ What has been said ot the statute of frauds, may, with more propriety, be applied to every rule of law, drawn from the principles of natural equity, to prevent fraud; that it should never be turned, construed, or used, so as to protect, or be a means of fraud.” 3 Bur. 1919. The construction given to the registry act, 7 Ann, c. 20, by the court of Chancery in England, is founded on this liberal and salutary doctrine. That act requires, that deeds, or conveyances, and all in. cumbrances upon lands, lying in the county of Middlesex, shall be registered in a certain dffice, within a certain time; otherwise every such conveyance shall be void, against any subsequent purchaser, for a valuable consideration. The intention of this act was to secure subsequent purchasers and mortgagees, against prior secret conveyances, and fraudulent incumbrances, as appears by the preamble ; and, therefore, it has been decided, that where a man purchases, with notice of a prior incumbrance, or of a prior unregistered deed, his deed, although registered, shall not be established, because, he must be presumed to have purchased with a fraudulent object in view. 1 Str. 664. 2 Eq. Ca. Abr. 63. 3 Atk. 646. Ambl. 436. Cowp. 712. The object of both acts appears to be the same, and they ought to receive the same construction. In the case of Le Neve v. Le Neve, 3 Atk. 646. Ambl. 436, a subsequent registered deed was set aside in equity, and the execution of a trust, according to prior marriage articles, unregistered, was decreed, on the ground that the party had notice of the prior incumbrance.
It has been objected, that the authority of this case can have no influence in the decision of the principal case, seeing that it was a determination in equity ; and that it seems agreed by the opinions given in equity, that at law the legal estate must remain where the effect of registering has placed it: also, that the end proposed by registering, was to prevent parol proof of notice. 2 Atk. 275. To this Í answer, that I can discern no good reason why the same principle and doctrine should not apply, as well in the courts of law, as in equity, when the question can be fairly made, and inves. tigated, by the rules of the common law. The courts of law and equity have concurrent jurisdiction in matters of fraud. 1 Bur. 396. *370 1 Fonbl. 110. Cowp. 434. Our courts of equity differ from those 0j. jaw> more ¡n exteriur ¡natters of practice, than in principle ; and more >n the mode of relief, than in determining the essential merits of the cause, as to the naked question, who shall prevail in litigahon. They can give relief in cases where, by the rules of common law, relief cannot be obtained, by compelling a discovery, decreeing tt performance in specie, &c., and may modify the relief to answer all the particular exigencies of the cause. 1 Wooddes. 209. But where, by the rules of the common law, relief may be administered in any cause, properly instituted and examinable in a court of law,, it seems absurd to suppose, that the same sound principles of reason, and natural justice, should not apply with equal force-in that court, as in a court of equity. In the cases decided in equity, it appears thatthere was a necessity for resorting to that court for relief. Therefore, when it is said that the statute of Anne leaves the legal estate where-the effect of registering has placed it, nothing moréis meant, than that this must be the effect, until equitable circumstances shall be shewn to take the case out of the statute, which, in the cases quoted, could not be done by the rules of the common law : but, in many cases, it may be done. As to the dictum, that the statute was made to prevent parol proof of notice. Hine v. Dodd, 2 Atk. 275, I cannot conceive its truth or propriety. The statute was made to guard against the evil consequences of secret conveyances} without any notice at all, and not to prevent parol proof of notice. By requiring the registration of deeds, it may be said, that written notice of prior incumbrances is made necessary; but, there are no negative words to shew that parol notice may not be sufficient.
To conclude, I am of opinion, that the verdict is right, and that a new trial ought not to be granted.
New trial refused.
[Note. The notes at the head of this ease must be regarded as an index to-the principles laid down by the presiding judge, in his charge to the jury, and in the opinion subsequently delivered by him in the Constitutional Court, rather than as an abstract of the points of law decided by that court. As the opinions of the other judges are not given, it is impossible to ascertain what points of law were settled by the decision of the court. The plaintiffs may have failed, for want of title originally, or because they were barred by the statute of limitations : and, although it might be inferred, from the refusal of a t.-ew trial, that the charge of the presiding judge was sanctioned by a majority of the court, yet, as the case did not depend upon the weight of evidence, except upon one point in relation to the statute of limitations, if the court were satisfied, that in any view of it, the plaintiffs were not entitled to recover, a new trial would scarcely have been ordered, although there had been a misdirection on some of the points made. The charge, too, presented several distinct and independent *371 grounds on which the defendant was intitled to the verdict; and it would have been sufficient, if the court had sanctioned any one of them, alth 'Ugh they may have differed as to others. For instance, if a majority of the court were of opiuion, that the estate of Elizabeth Withers was enlarged by the habendum to a fee simple; yet, if they concurred with the presiding judge in rejecting the rule, that the inheritance could only descend to the -blood of the first purchaser, the title on which the plaintiff relied, would have failed, and. the case would have depended on the priority of the conveyances from Rand. The case, however. is curious, and instructive, in exhibiting the diversity, and the vagueness., and uncertainty, of the opinions then prevalent, as to the application and effect of English rules of construction, under the modification of our system, occaj -sioned by the exclusion of estates-tail.]